IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BERNICE POOLE-REESE, | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) CIVIL ACTION NO. 3:05-CV-750 |
| AMERICAN INTERNATIONAL | ) |
| GROUP, INC.; et al. | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

COME NOW Defendants American General Financial Services of Alabama, Inc. (improperly designated as American General Finance Inc. in the complaint), as successor to American General Finance, Inc., Merit Life Insurance Company, and Yosemite Insurance Company (hereinafter collectively referred to as "Defendants"), by and through their undersigned counsel, appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil procedure, and specifically preserving the right to seek arbitration pursuant to 9 U.S.C. § 1, *et seq.*   As grounds for this opposition to Plaintiff's Motion to Remand, Defendants state as follows:

## I. INTRODUCTION

Plaintiff commenced the present action on July 7, 2005 by filing a complaint in the Circuit Court of Macon County, Alabama.   In her Complaint, Plaintiff advances a variety of vague allegations designed to defeat Defendants' valid fraudulent joinder argument.   (See Plaintiff's Complaint, ¶¶13-23).  Specifically, Plaintiff asserts that Lamar Harris, Kathie Rowell,

and Amanda Walls (the "Non-Diverse Defendants") misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve her chances of being approved for the loans in question. (Plaintiff's Complaint, ¶¶13, 16). Moreover, Plaintiff alleges that the Non-Diverse Defendants misrepresented to her that refinancing and consolidating prior debt would save her money. (Plaintiff's Complaint, ¶15). Based on these allegations, Plaintiff appears to assert the following individual causes of action with respect to loans she obtained seven years ago: (1) fraudulent misrepresentation and/or concealment; (2) negligent misrepresentation; (3) negligent and/or wanton hiring, training, and supervision; and (4) breach of fiduciary duties.

On or about August 8, 2005, Defendants removed the present action to this Court on diversity jurisdiction grounds under 28 U.S.C. § 1332(a). In their Notice of Removal, Defendants specifically demonstrated that the Non-Diverse Defendants have been fraudulently joined and that, accordingly, diversity jurisdiction exists under 28 U.S.C. § 1332(a). On or about September 1, 2005, Plaintiff filed her Motion to Remand wherein she argued that the Non-Diverse Defendants were properly joined and that Defendants failed to show that the amount in controversy requirement had been satisfied.[1] As demonstrated in detail below, Plaintiff's contentions are unfounded, and her Motion to Remand is due to be denied.

## II. ARGUMENT

Federal district courts have jurisdiction over civil actions where there is complete diversity among the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

---

[1] On September 9, 2005, Defendants filed a Motion for an Extension of Time to Respond to Plaintiff's Motion to Remand for the Purpose of Conducting Remand-Related Discovery that remains pending before this Court. Though Defendants believe that they have established that Plaintiff's Motion to Remand should be denied, they maintain their position that remand-related discovery is necessary to clarify Plaintiff's vague and evasive claims and to conclusively demonstrate that this Court should exercise diversity jurisdiction over this matter.

Though diversity jurisdiction generally mandates that "every plaintiff . . . be diverse from every defendant," Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996), federal courts in Alabama have specifically held that "[w]hen a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity jurisdiction." Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1256 (M.D. Ala. 2001)(citing Tapscott, 77 F.3d at 1360.).

It is clear that the Non-Diverse Defendants have been fraudulently joined in the present action. Plaintiff's claims against them are both time-barred and fail as a matter of law. Thus, their citizenship should be disregarded, creating complete diversity between the Plaintiff and all properly joined Defendants. In addition, Defendants have provided more than enough evidence to support their contention that the amount in controversy exceeds $75,000 in the present action. As such, both diversity jurisdiction requirements have been satisfied herein, and Plaintiff's Motion to Remand is due to be denied.

### A.    Complete Diversity Exists in the Present Action Because Defendants Kathie Rowell, Lamar Harris and Amanda Walls Have Been Fraudulently Joined.

Complete diversity exists in the present action because the citizenship of the Non-Diverse Defendants should be disregarded because of their fraudulent joinder. See Bullock, 165 F. Supp. 2d at 1256 (citing Tapscott, 77 F.3d at 1360). Fraudulent joinder occurs where "there is no possibility that the Plaintiff can prove a cause of action against the resident (non-diverse) defendant." Fowler v. Provident Life and Accident Insurance Co., 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003)(citing Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)). In addition to those instances where the Plaintiff's claims substantively fail, fraudulent joinder also occurs where the only claims against a non-diverse defendant are barred by the statute of limitations, leading courts to deny motions to remand. See Owens v. Life Ins. Co. of

Georgia, 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003); Fowler, 256 F.Supp.2d 1243; Bullock, 165 F. Supp. 2d 1255; Wakeland v. Brown & Williamson Tobacco Corp., 996 F. Supp. 1213 (S.D. Ala. 1998).

In Owens, the plaintiff brought an action in 2003 against an insurance company and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the insurance company, with respect to a life insurance policy purchased in 1984. Owens, 289 F.Supp.2d at 1321. In conjunction with these allegations, the plaintiff asserted claims for breach of contract, fraud, and fraudulent suppression against both defendants. Id. The defendants subsequently removed the case, arguing that complete diversity existed by virtue of the individual defendant's fraudulent joinder. Id. at 1321-23. Judge Fuller found that the plaintiff was provided with documentation in 1984 that both contradicted the alleged oral misrepresentations and provided the information allegedly suppressed. Id. at 1326. Accordingly, the Court concluded that the plaintiff "should have discovered the possibility of fraud and misrepresentation in 1984 when he purchased the Policy, and the two year statute of limitations commenced running at that time." Id. Plaintiff's claims against the individual defendant were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing a cause of action against the individual defendant, the Court held that said defendant was, in fact, fraudulently joined and denied the plaintiff's motion to remand. Id.

In Bullock, Judge DeMent reached the same conclusion in a virtually identical case. Bullock, 165 F. Supp. 2d 1255. There, the plaintiff filed an action in 2001 against a health insurer and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the health insurer, with respect to an

insurance policy purchased in 1998. Id. at 1256. In conjunction with these allegations, the plaintiff asserted various fraud claims and a breach of contract claim against both defendants. Id. The defendants subsequently removed the case, arguing that diversity jurisdiction existed by virtue of the individual defendant's fraudulent joinder. Id. Judge DeMent concluded that the plaintiff's breach of contract claim against the individual defendant failed as a matter of law because said defendant was not a party to the contract at issue. Id. Additionally, the Court also noted that the plaintiff was provided with documentation in 1998 that both contradicted the individual defendant's alleged oral misrepresentations and provided the information allegedly suppressed. Id. at 1258. Accordingly, the Court concluded that the statute of limitations for the plaintiff's fraud claims "began running in 1998 and expired no later than 2000," well before the action at issue was commenced. Id. Plaintiff's fraud claims against the individual defendants were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing fraud claims against the individual defendant, the Court held that said defendant was fraudulently joined and denied the plaintiff's motion to remand. Id.

Finally, Judge Blackburn adopted the same line of reasoning in Fowler. 256 F.Supp.2d 1243. There, the plaintiff filed an action in 2002 against an insurer and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the insurer, with respect to a disability insurance policy purchased in 1992. Id. at 1245. In conjunction with these allegations, the plaintiff asserted fraudulent and/or negligent misrepresentations and fraudulent suppression. Id. The defendants subsequently removed the case, arguing that diversity jurisdiction existed by virtue of the individual defendant's fraudulent joinder. Id. at 1246. Judge Blackburn found that the plaintiff was

provided with documentation in 1992 that both contradicted the alleged oral misrepresentations and provided the information allegedly suppressed, Id. at 1248-49, and concluded that "the plaintiff should have discovered the possibility of fraud and misrepresentation in 1992 when she purchased the policy, and the two year statute of limitations commenced running at that time." Id. at 1249. Id. Plaintiff's fraud claims against the individual defendants were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing fraud claims against the individual defendant, the Court held that said defendant was fraudulently joined and denied the plaintiff's motion to remand. Id. at 1249-50.

As demonstrated in detail below, the Plaintiff's claims against the Non-Diverse Defendants in the present action are both time-barred and fail as a matter of law. As such, the Non-Diverse Defendants have been fraudulently joined in the present action, and Plaintiff's Motion to Remand should be denied.

**1.    Plaintiff's Motion to Remand Does Not Contest that Defendant Lamar Harris is Fraudulently Joined in the Present Action.**

In their Notice of Removal, Defendants contend that Lamar Harris, Kathie Rowell, and Amanda Walls had been fraudulently joined in the present action. In her Motion to Remand, however, Plaintiff only addresses the joinder of Kathie Rowell and Amanda Walls, thereby conceding the fraudulent joinder of Lamar Harris. As such, this Court should find that Lamar Harris has been fraudulently joined in the present action and disregard his citizenship for purposes of assessing diversity jurisdiction.

2.    **Plaintiff's Claims Against Defendant Amanda Walls Fail as a Matter of Law Because All Available Evidence Establishes that She was Not Involved with the Loans in Question.**

The loan documents for Plaintiff's August 3, 1998 and October 19, 1998 loans reveal absolutely no involvement whatsoever by Defendant Amanda Walls. (The Affidavit of Robert S. Ritter authenticating Plaintiff's loan documents is attached hereto as Exhibit "A;" Plaintiff's loan documents are attached hereto as Exhibit "A(1)"). Given her total lack of involvement, Amanda Walls could not have possibly made any misrepresentations regarding Plaintiff's August 3, 1998 and October 19, 1998 loans, and any claims to the contrary must necessarily fail. For this reason, Defendant Amanda Walls has been fraudulently joined in the present action.

3.    **Plaintiff's Fraud-Based Claims Against the Non-Diverse Defendants are Time-Barred by the Applicable Two Year Statute of Limitations.**

Plaintiff's fraud-based claims against the Non-Diverse Defendants are governed by a two year statute of limitations.[2] Thus, to comply with the statute of limitations, Plaintiff's claims against the Non-Diverse Defendants for fraudulent misrepresentation and/or concealment and breach of fiduciary duties must have been brought within two years of the accrual of said claims.

Alabama courts have held that the two year limitations period begins to run for fraud claims "when the plaintiff discovers the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So. 2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So. 2d 671, 676 (Ala. 1992). Fraud "is deemed to have been discovered when it ought to have been discovered; that is, at the time of the discovery of facts that, on the part of a

---

[2] Because no specific limitations period is prescribed for Plaintiff's fraud claims, they are all governed by the general, two (2) year statute of limitations period outlined in ALA. CODE § 6-2-38(l). See, e.g., Ex parte American General Finance, Inc., 795 So. 2d 685, 686-87 (Ala. 2000); Lott v. Tarver, 741 So. 2d 394, 397 (Ala. 1999); Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d 307, 308 (Ala. 1997).

person of ordinary prudence, would provoke inquiry that if followed up, would lead to the discovery of the fraud." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d at 168. Thus, the two-year limitations period begins to run on "the date the plaintiff has actual or constructive notice of the fraud." Lott v. Tarver, 741 So. 2d at 397 (citing Ala. Code § 6-2-3 (1975)).

The law is now clear that "fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered." Ex parte American General Finance, Inc., 795 So. 2d at 689-90. Accord Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d at 308; Foremost Ins. Co. v. Parham, 693 So. 2d 409, 422 (Ala. 1997); Jackson v. Secor Bank, 646 So. 2d 1377, 1379 (Ala. 1994); Kelly v. Connecticut Mut. Life Ins. Co., 628 So. 2d 454, 458 (Ala. 1993); Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d at 169. The plaintiffs' failure to read the documents he receives or signs does not alter this rule. Ex parte American General Finance, Inc., 795 So. 2d at 690-91; Harrell v. Reynolds Metals Co., 495 So. 2d 1381, 1387 (Ala. 1986). Otherwise, "contracts would not be worth the paper on which they were written." Dobbins v. Dicus Oil Co., 495 So. 2d 587, 588 (Ala. 1986).

In the present action, Plaintiff advances a variety of vague allegations with respect to her August 3, 1998 and October 19, 1998 loans. (See Plaintiff's Complaint, ¶¶13-23). Specifically, Plaintiff asserts that the non-diverse Defendants misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve her chances of being approved for the loans in question. (Plaintiff's Complaint, ¶¶13, 16). Moreover, Plaintiff alleges that the non-diverse Defendants misrepresented to her that refinancing and consolidating prior debt would save her money. (Plaintiff's Complaint, ¶15). Plaintiff, however, signed loan documents

in connection with these loans that contain language at odds with these alleged oral statements, and triggered Plaintiff's duty of inquiry.  (See Ex. A(1)).

Plaintiff's August 3, 1998 and October 19, 1998 loan documents disclose all of the relevant financial terms, including the amount financed, finance charge, total of payments, interest rate, amount of monthly payment, and total number of payments.  (See id.).  Plaintiff could have, and should have, easily used this information to ascertain whether refinancing prior loans and consolidating existing debt was in her financial best interests.  Similarly, Plaintiff's loan documents clearly disclose the premiums for all insurance products purchased.  (See id.).  Plaintiff could have, and should have, easily used this information to ascertain whether purchasing Defendants' insurance products was, in fact, a "good deal."

Regarding the optional nature of credit life and/or credit disability insurance, Plaintiff's loan documents specifically state:

> INSURANCE: Credit life and/or credit disability insurance are not required to obtain a loan and will not be provided unless you sign and agree to pay the additional cost.  You understand that we and/or our insurance affiliates anticipate a benefit and/or a profit from the sale of insurance, and you consent thereto if you select such insurance.

(Id.).  Similarly, with respect to the optional nature of personal property insurance, Plaintiff's loan documents specifically state:

> You are required to maintain property insurance on personal property securing this loan other than household goods.  You may obtain such insurance from anyone you want, or provide it through an existing policy with loss payable to us.
>
> You are not required to purchase property insurance on your household goods to secure this loan.  If you choose to have such insurance, you may obtain the insurance from anyone you want.  You should consider any homeowner's or other insurance which you may already have when deciding to purchase insurance with this loan.

(Id.). Following these disclosures, Plaintiff provided her signature on both of the loans at issue below phrases denoting her desire to purchase credit insurance products. (See id.).

Finally, Plaintiff also provided her signature on her loan documents just below a statement indicating that she received a copy of the documents containing the aforementioned disclosures. (See id.). As such, Plaintiff was on notice of any alleged misrepresentations and/or omissions by the Non-Diverse Defendants regarding the optional nature and benefits of credit insurance and the financial benefits of refinancing and consolidating existing debt at the time of her respective loan closings.

Because Plaintiff was on notice of her fraud-based claims against the Non-Diverse Defendants on August 3, 1998 and October 19, 1998, said claims accrued, and the statute of limitations began to run, from these respective dates. Plaintiff, however, did not file the present action until July 7, 2005, approximately seven years after the loans at issue. As such, her fraud-based claims against the Non-Diverse Defendants are time-barred by the applicable two year statute of limitations.

4.    **Plaintiff's Negligence-Based Claims Against the Non-Diverse Defendants are Time-Barred by the Applicable Two Year Statute of Limitations.**

Plaintiff's negligence-based claims against the Non-Diverse Defendants are similarly governed by a two year statute of limitations.[3] The law in Alabama is well settled that causes of action for negligence and wanton misconduct accrue, and the two-year statute of limitations begins to run, as soon as "the plaintiff can first maintain the action." Booker v. United American Ins. Co., 700 So. 2d at 1339. Accord Ex parte Burnham, Klinefelter, Halsey, Jones & Cater,

---

[3] Because no specific limitations period is prescribed for Plaintiff's negligence claims, they are also governed by the general, two year statute of limitations period outlined in ALA. CODE § 6-2-38(l).

P.C., 674 So. 2d 1287, 1289 (Ala. 1995); Cofield v. Smith, 495 So. 2d 61, 62 (Ala. 1986). A plaintiff is entitled to "maintain an action" when the party "suffers an injury or a loss or damage." Jones v. Blanton, 644 So. 2d 882, 887 (Ala. 1994) Thus, the statute begins to run at this initial point "regardless of whether the full amount of damage is apparent at the time of the first injury. Booker, 700 So. 2d at 1339.

In Booker, plaintiffs brought suit against an insurance company and others for negligence, wanton misconduct, fraudulent misrepresentation, and fraudulent suppression arising out of their purchase of an insurance policy after the agent "made various misrepresentations to them." 700 So. 2d at 1334. The trial court granted the defendants' motion for summary judgment on all of plaintiffs' claims. Id. The Alabama Supreme Court affirmed the trial court's judgment in its entirety. Id. at 1340. In holding that the plaintiffs' negligence and wanton misconduct claims were barred by the two-year limitations period, the Supreme Court stated as follows:

> It is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury. In Henson, 621 So. 2d at 1271, 1274, this Court held that the plaintiff's completion of an application for a health insurance policy started the running of the two-year limitations period for a negligence action. . . . In this case, as in Henson, 621 So. 2d at 1274, . . . any negligence or wantonness on the part of Stone or United American occurred, at the latest, in May 1991, when the Bookers signed the application and wrote the check for the policy. Thus, their claims accrued in May 1991. Because the Bookers filed their complaint in August 1993 — over two years after their claims accrued — their negligence and wantonness claims are time-barred.

700 So. 2d at 1339-40.

In the present action, Plaintiff alleges that the Non-Diverse Defendants' negligence and wanton conduct resulted in, among other things, her having to pay for additional interest,

insurance, and fees. (See Plaintiff's Complaint, ¶ 27). These alleged injuries were first incurred on the dates of the respective loan closings. As such, Plaintiff's negligence-based claims against the Non-Diverse Defendants accrued, and the statute of limitations began to run, on August 3, 1998 and October 19, 1998 because it was at that time that Plaintiff would have first suffered a legal injury for which she would have been entitled to maintain a cause of action. See Booker, 700 So. 2d at 1339; Jones v. Blanton, 644 So. 2d at 887. Plaintiff, however, did not file the present action until July 7, 2005, approximately seven years after the loans at issue. As such, her negligence-based claims against the Non-Diverse Defendants are time-barred by the applicable two year statute of limitations.

### 5.  Plaintiff's Fraudulent Misrepresentation Claim Against the Non-Diverse Defendants Fails as a Matter of Law.

In addition to the statute of limitations bar discussed above, Plaintiff cannot possibly recover against the Non-Diverse Defendants under a fraudulent misrepresentation claim because said claim fails as a matter of law. The Alabama Supreme Court has held that recovery under a fraud theory necessitates a showing that the plaintiff "reasonably relied" on the alleged misrepresentations. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Under this standard, "[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts," then the plaintiff's reliance on the alleged misrepresentations was not reasonable, and "the plaintiffs should not recover." Massey Automotive, Inc. v. Norris, 895 So.2d 215, 220 (Ala. 2004) (quoting Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 759 (Ala. 1983)).[4]

---

[4] The foregoing principles are best illustrated by the Alabama Supreme Court's recent decision in Liberty National Life Ins. Co. v. Ingram, 887 So.2d 222 (Ala. 2004). In Ingram, the plaintiff sued the defendant insurer for fraud based on allegations that said insurer told him that his policy would be paid up after 10 years. Id. at 223. In actuality, premiums on the policy at issue were payable for the entire life of the policy, and the policy at issue clearly stated as much.

In the present action, Plaintiff alleges that the Non-Diverse Defendants fraudulently misrepresented the benefits and optional nature of credit insurance and the financial benefits of refinancing and consolidating prior debt as to her 1998 loans. As demonstrated above, however, Plaintiff signed loan documents in connection with these loans that clearly provide all of the relevant financial terms for the loans at issue, including the amount financed, finance charge, total of payments, interest rate, amount of monthly payment, and total number of payments. (See Ex. A(1)). Moreover, Plaintiff's loan documents also provide the financial terms for the credit insurance at issue. (See id.). Plaintiff could have easily used this information to ascertain whether refinancing prior loans and existing debt and purchasing credit insurance was in her financial best interests. Further, Plaintiff's loan documents clearly disclose that credit insurance was not needed to obtain the loans in question. (See id.). Had Plaintiff taken the time to examine any of this information, she would have been able to substantiate the truth, or lack thereof, of the Non-Diverse Defendants' alleged representations. As such, her reliance on their alleged misrepresentations is unreasonable, and her claims for fraudulent misrepresentation against said Defendants fail as a matter of law.

### 6.    Plaintiff's Fraudulent Concealment Claim Against the Non-Diverse Defendants Fails as a Matter of Law.

In addition to the statute of limitations bar discussed above, Plaintiff's fraudulent concealment claims against the Non-Diverse Defendants also fail as a matter of law. Plaintiff presumably contends that the Non-Diverse Defendants fraudulently failed to disclose the optional nature of credit insurance and the financial consequences of refinancing or consolidating

---

Id. at 228. Because the plaintiff received documents clearly contradicting the alleged misrepresentations, the Court held that "[he] did not reasonably rely on [the insurer's] representation." Id. at 229. As such, the Court entered summary judgment in favor of the defendant insurer on the plaintiff's fraud claim. Id. at 229-30.

prior debt. At the outset, it bears noting that such allegations are completely negated by Plaintiff's loan documents, which, as demonstrated above, clearly disclose the information allegedly suppressed. Moreover, the Non-Diverse Defendants had no duty to disclose the information allegedly suppressed.

Fraudulent concealment claims such as the one at hand require a showing that the defendant in question had a duty to disclose the suppressed facts. Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 785-86 (Ala. 1997) (citing Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala. 1996); Gewin v. TCF Asset Mgmt. Corp., 668 So.2d 523 (Ala. 1995)). In the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose a fiduciary duty requiring disclosure of certain information. Id. at 786-87 (citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)). Where parties are engaged in arms-length commercial transactions and are fully capable of protecting their own interests, "Alabama common law imposes no duty to disclose unless the information is requested." Id. at 787 (citing Gewin, supra; Altmayer v. City of Daphne, 613 So.2d 366 (Ala. 1993); Bama Budweiser of Montgomery, Inc. v. Anheuser Busch, Inc., 611 So.2d 238 (Ala. 1992)).

Here, a creditor-debtor relationship was undoubtedly created as the parties engaged in an arms-length commercial transaction. Thus, the above precedent demonstrates that there is no duty to disclose unless specific information is requested. The Non-Diverse Defendants had no duty to disclose the information allegedly suppressed, and Plaintiff's claims to the contrary fail as a matter of law.

7.    **Plaintiff's Breach of Fiduciary Duties Claim Against the Non-Diverse Defendants Fails as a Matter of Law.**

In addition to the statute of limitations bar discussed above, Plaintiff cannot possibly assert a cause of action for breach of fiduciary duties against the Non-Diverse Defendants because no such duty existed between them. As demonstrated above, it is well settled that, in the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose fiduciary duties on the creditor. Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 786-87 (Ala. 1997)(citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)). With that said, there is absolutely no evidence that Plaintiff and the Non-Diverse Defendants enjoyed a special confidential relationship, the likes of which would impose fiduciary duties on the latter. As such, Plaintiff breach of fiduciary duties claim against the Non-Diverse Defendants fails as a matter of law.

8.    **Plaintiff's Negligent and/or Wanton Hiring, Training, and Supervising Claim Against the Non-Diverse Defendants Fails as a Matter of Law.**

In addition to the statute of limitations bar discussed above, Plaintiff's negligent and/or wanton hiring, training, and supervising claim against the Non-Diverse Defendants fails as a matter of law. It is axiomatic that such claims can only be asserted against an employer in connection with the alleged misconduct of an employee. See Bridges v. Principal Life Ins. Co., 141 F.Supp.2d 1337, 1340 n. 3 (M.D. Ala. 2001)(noting that claims of negligent supervision must necessarily be brought against the insurer and not against the insurer's agent). In the present action, however, the Non-Diverse Defendants are all individual employees of the corporate Defendants. As such, Plaintiff cannot possibly prevail on a claim for negligent and/or wanton hiring, training, and supervising against the Non-Diverse Defendants themselves.

9. **Plaintiff's Failure to Serve the Non-Diverse Defendants With Process Further Illustrates that Said Defendants Have Been Fraudulently Joined.**

Lastly, Plaintiff has failed to make a good faith attempt to serve process on the Non-Diverse Defendants, providing further evidence that she named them in the lawsuit solely to defeat diversity jurisdiction. Indeed, until contacted by undersigned, Kathie Rowell had no idea that she had even been named in the lawsuit. (See Affidavit of Kathie Rowell, attached hereto as Exhibit "B."). Such failure to attempt service of process is indicative of fraudulent joinder where it suggests a general intent not to proceed against the Non-Diverse Defendants. See Morgan v. Estate of Bill Cook, 180 F.Supp.2d 1301, 1304 (M.D. Ala. 2001) (finding that fraudulent joinder may exist where a plaintiff's failure to serve in-state defendants and other evidence suggests an intent to abandon the claims against said parties); Mask v. Chrysler Corp., 825 F.Supp. 285, 289 (N.D. Ala. 1993). In the case at hand, Plaintiff clearly has no intention of proceeding against the Non-Diverse Defendants, given the fact that there is no evidence that Defendant Amanda Walls was involved in any way with Plaintiff's August 3 1998 or October 19, 1998 loans and that Defendant Kathie Rowell, whom the undersigned located with little effort, had absolutely no idea that she had been named as a Defendant in the present action. (See Ex. B). As a result, the Non-Diverse Defendants have been fraudulently joined in this action, and their citizenship should be disregarded for the purposes of determining diversity jurisdiction.

B. **Defendants Have Provided Sufficient Evidence to Support Their Contention that the Amount in Controversy Requirement is Satisfied in the Present Action.**

The amount in controversy in the present action exceeds $75,000 notwithstanding Plaintiff's refusal to specify damages. In her complaint, Plaintiff alleges that she has suffered monetary damages, that she "has suffered mental anguish and emotional distress," and that she "has otherwise been injured and damaged." (Plaintiff's Complaint, ¶ 27). Based on these

alleged injuries, Plaintiff seeks a "judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs." (Id.)

Because Plaintiff seeks an unspecified amount of damages, Defendants are only required to show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996). Defendants clearly satisfied this requirement in their Notice of Removal by citing an abundance of Alabama decisions involving similar claims wherein the Plaintiff was awarded damages in excess of $75,000.[5] Federal courts in Alabama adjudicating similar claims have repeatedly

---

[5] See e.g. Jeter v. Orkin Exterminating Co., supra, ($2,000,000 punitive damages awarded in fraud and breach of contract matter); Johns v. A.T. Stephens Enterprises, Inc., 815 So. 2d 511 (Ala. 2001) ($150,000 punitive damage award in conspiracy to convert matter); Travelers Indemnity Co. of Illinois & Crawford & Co. v. Griner, 809 So. 2d 808 (Ala. 2001) ($200,000 punitive damage award in fraud and outrage matter); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) ($100,000 punitive damage award in conversion and trespass matter); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); Cooper & Co. v. Lester, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538 to $250,000 in fraud action); Prudential Ballard Realty Co., Inc. v. Weatherly, supra, (award of $750,000 of punitive damages in fraud action); Oliver v. Town, 770 So. 2d 1059 (Ala. 2000) ($249,000 award of punitive damages in conversion action); Chrysler Corp. v. Schiffer, 736 So. 2d 538 (Ala. 1999) ($150,000 award of punitive damages in fraud and breach of contract matter); Life Insurance Company of Georgia v. Parker, supra, ($150,000 award of punitive damages in insurance fraud matter); Patel v. Patel, 708 So. 2d 159 (Ala. 1998) ($225,000 award of punitive damages in fraud and breach of contract matter); Talent Tree Personnel Srvs., Inc. v. Fleenor, 708 So. 2d 917 (Ala. 1997) ($1,500,000 award of punitive damages in fraud and breach of contract matter); American Pioneer Life v. Williamson, 704 So. 2d 1361 (Ala. 1997) ($750,000 award of punitive damages in fraud and breach of contract case); Union Sec. Life Ins. Co. v. Crocker, 709 So. 2d 1118 (Ala. 1997) ($1,000,000 award of punitive damages in insurance fraud matter); Life Ins. Co. of Georgia v. Johnson, supra, ($3,000,000 award of punitive damages in insurance fraud action); Hillcrest Center, Inc. v. Rone, 711 So. 2d 901 (Ala. 1997) ($94,000 award of punitive damages in fraudulent inducement action); First Commercial Bank v. Spivey, 694 So. 2d 1316 (Ala. 1997) ($500,000 award of punitive damages in fraud and breach of contract matter); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111 (Ala. 1997) ($1,792,000 in punitive damages); Johnson v. Mercury Finance Co., CV-93-52, in the Circuit

acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. See Owens, 289 F. Supp. 2d 1319 (after careful review of the cases cited by the defendant, the Court concluded that

---

Court of Barbour County, Alabama, Clayton Division (plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note; jury awarded $90,000 in compensatory damages, and $50,000,000 in punitive damages, the award of punitive damages was remitted to $2,000,000.); Key v. Prudential Insurance Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (the plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required; jury awarded $25,000,000 in punitive damages.); Parham v. Foremost Insurance Co., 693 So. 2d 409 (Ala. 1997) (jury awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages; the punitive damages were later remitted to $175,000.). Consequently, the amount in controversy requirement has been established.

See e.g. New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2001) (awarding $100,000 in compensatory damages, the majority of which for mental anguish, in conversion action); Prudential Ballard Realty Co., Inc. v. Weatherly, 792 So. 2d 1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish, in fraud matter); Jeter v. Orkin Exterminating Company, Inc., 832 So. 2d 25 (Ala. 2001) ($300,000 mental anguish awarded in fraud and breach of contract matter); Oliver v. Towns, 770 So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) (in a conversion claim, more than half of the $100,000 award of compensatory damages was attributed to mental anguish); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000 of the $75,000.00 compensatory damage award was attributed to mental anguish); Liberty National Life Ins. Co. v. Caddell, 701 So. 2d 1132 (Ala. 1997) (awarding $50,000 in compensatory damages for mental anguish resulting from alleged conversion); Hare v. Mutual Savings Life, CV-94-529, 1997 WL 743899 (LPR JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); Mallard v. Countywide Funding Corp., CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); Ball v. ALFA Realty, Inc., CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); Norwood v. Glen Lanes Realty Co., CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); Sperau v. Ford Motor Co., CV-91-34, 1994 WL 180700 (LRP JURY) (awarding $4,492,000 in compensatory damages to four Plaintiffs for emotional distress allegedly caused by fraud). Consequently, the amount in controversy requirement is easily satisfied in the case at hand.

said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); Fowler, 256 F.Supp.2d at 1249 (same); Bullock, 165 F. Supp. 2d at 1259 (same).

Relying on cases such as Bennett v. American Medical Security, Civil Action No. 02-D-120-N (M.D. Ala. Feb. 8, 2002) and Fabritis v. United Wisconsin Life Insurance Co., Civil Action No. 02-T-820-N (M.D. Nov. 1, 2002), Plaintiff contends that Defendants failed to establish that the amount in controversy requirement has been met. However, the only evidence that the Bennett defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was a blanket assertion in a footnote that she had satisfied her heavy burden. Bennett, No. 02-D-120-N, at *2. Similarly, the only evidence that the Fabritis defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was the unsupported assertion in their removal notice that Jury awards in cases on the same type of suits routinely exceed $75,000. Fabritis, Civil Action No. 02-T-820-N, at *4. By contrast, Defendants here have provided the Court with ample support for the proposition that the amount in controversy requirement has been met. See Owens, 289 F. Supp. 2d 1319; Fowler, 256 F.Supp.2d at 1249; Bullock, 165 F. Supp. 2d 1259. As such, this Court should find that the amount in controversy requirement is satisfied in the present action.

## III. CONCLUSION

Based upon the foregoing, this Court has diversity jurisdiction over the present matter, and Plaintiff's Motion to Remand is due to be denied.

Respectfully submitted,

Robert H. Rutherford (RUT002)
David A. Elliott (ELL027)
Matthew T. Mitchell (MIT050)

Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

1393756

20

## CERTIFICATE OF SERVICE

I hereby certify that on September ___12th___, 2005, I electronically filed the foregoing Motion for Additional Time to Respond to Plaintiffs' Motion to Remand for the Purpose of Conducting Remand-Related Discovery with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Jere L. Beasley, Thomas J. Methvin, C. Lance Gould, Thomas Julian Butler, David A. Elliott, Robert H. Rutherford, Jeffrey M. Grantham, and John Thomas Aquina Malatesta.


OF COUNSEL